**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOFFREY BENFORD,                ) | |
|                ) | Case No. 08 C 917 |
|     Plaintiff,           ) | |
|                ) | Judge Kennelly |
|     v.                ) | |

JOFFREY BENFORD,                              )
                                             )     Case No. 08 C 917
          Plaintiff,                         )
                                             )     Judge Kennelly
     v.                                      )
                                             )
CHRISTOPHER M. RANIERI d/b/a                 )
LAW OFFICE OF CHRISTOPHER M. RANIERI, P.A.;  )
CHRISTOPHER M. RANIERI, P.A.;                )
UNITED STATES CREDIT AGENCY, LLC, f/k/a      )
FIRST AMERICAN INVESTMENT COMPANY, LLC,      )
                                             )
          Defendants.                        )

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

       Plaintiff Joffery Benford ("Plaintiff"), by and through his counsel, hereby moves this Honorable Court for an award of reasonable attorney's fees in the amount of at least $5,367 and costs of $498.32 pursuant to the fee shifting provision of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692k(a)(3) to be entered against Defendants Christopher M. Ranieri d/b/a Law Office of Christopher M. Ranieri, P.A. ("Mr. Ranieri") Christopher M. Ranieri, P.A. ("Ranieri P.A."), collectively ("Ranieri").

       In support of this motion, Plaintiff states as follows:

**PROCEDURAL BACKGROUND**

       1.      On February 13, 2008, Plaintiff brought this action to secure redress against an unlawful credit and collection practice that violated the FDCPA sections 1692e, e(2)(A), e(5), e(8) and e(10) and state law, intrusion on seclusion invasion of privacy. (Dkt. 1).

2.      Plaintiff's Complaint, as amended[1], alleges that Ranieri, United States Credit Agency ("USCA")[2] and S & P Capital Management LLC d/b/a S & P Capital Investments, Inc. ("S&P")[3] in attempting to collect an old debt, believed to have been paid off, contacted one of Plaintiff's relatives informing her that Plaintiff needed to be served with court papers for a November 2007 hearing, when in fact Plaintiff was not sued and no such hearing existed.  Furthermore, Plaintiff alleges that Defendants[4] failed to note that Plaintiff had disputed the debt and permitted the debt to be collected upon by another debt collector subsequent to the transfer of the debt.

3.      On February 14, 2008, Defendants were sent a Notice of Law Suit and Request for a Waiver of Summons along with the Complaint.  Defendants did not waive being served. (Dkt. 5-7).

4.      On February 27, 2008, Plaintiff's counsel sent by certified mail this Court's Minute Order regarding the April 18, 2008 initial status conference. (Dkt. 10).

5.      On March 25, 2008, an officer of FAIC, Carl Steinbrenner, whose name also appears in Ranieri's counsel's billing records, was served with the Summons and Complaint.  (Dkt. 12).

6.      On March 27, 2008, Ranieri was served with the Summons and Complaint. (Dkt. 16).

---

[1]  Docket 27, April 28, 2008.

[2]  USCA is the entity formerly known as First American Investment Company, LLC ("FAIC").

[3]  Plaintiff dismissed S & P without prejudice as service could not be obtained on the company as it was reported to Plaintiff's counsel by Goins, Underkofler, Crawford & Langdon of Dallas, Texas that S & P was out of business.

[4]  "Defendants" as used in the remainder of the motion refers only to Defendants Ranieri and USCA.

7.      On April 18, 2008, Defendants failed to appear at the *in camera* initial status conference or file a timely response to Plaintiff's Complaint.

8.      On April 18, 2008, the Court entered a default against Ranieri.  (Dkt. 23).

9.      On April 22, 2008, Ranieri's April 16, 2008 Answer to Plaintiff's Complaint and 7 asserted affirmative defenses was made available through the ECF system. (Dkt. 25).

10.     On May 9, 2008, Plaintiff accepted Ranieri's Rule 68 Offer of Judgment for $1,000 in statutory damages, $2,000 in actual damages and limited any award of attorney's fees and costs as to those incurred as of May 1, 2008, which are be determined by the Court. (Dkt. 34).

11.     Here Plaintiff was the prevailing party in full on his FDCPA statutory claims and an award of attorney's fees is mandatory for the violation of any provision of the FDCPA. 15 U.S.C. § 1692k(a)(3); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) *cert denied*, 515 U.S. 1160 (1995).

## THE BILLING RATE OF PLAINTIFF'S COUNSEL

12.     The parties have complied with Local Rule 54.3 and pursuant to Local Rule 54.3(e) is attached as <u>Appendix 1</u>, the Parties' Joint Statement on attorney's fees and costs.

13.     Ranieri does not dispute a billing rate for Curtis C. Warner at $260 per hour or Laura K. Bautista at $190 per hour as being reasonable.  <u>Appendix 1</u>.

14.     Attached as <u>Appendix 2</u> is the Declaration of Curtis C. Warner.  Attached as <u>Appendix 3</u> is the Declaration of Laura K. Bautista.

15.     In another FDCPA case resolved in 2007 where that plaintiff was represented by the same counsel representing Plaintiff here, the defendant stipulated to an hourly

rates for Curtis C. Warner at $260 per hour, deducting 1 hour of time for time spent after the Rule 68 Offer of Judgment was made, and $190 per hour Laura K. Bautista with no objection to time. *McClendon v. Continental Service Group, Inc*., 07 C 4784, Minute Order – Judgment, Dkt. 20 (N.D. Ill. 2007), attached hereto as Appendix 4.

16.    A $260 per hour billing rate for Curtis C. Warner, admitted to the Michigan Bar in 2002, is low in light of the $275 per hour award in a consumer case to Alex Burke, Appendix 5, an attorney admitted to the bar in 2003[5], and the finding in an FDCPA case *Parker v. Linebarger, Goggan, Blair & Sampson, LLP*, 06 C 2346, Dkt. 34, Final Approval Order Class Action Settlement (N.D. Ill. June 14, 2007), that $290 hourly rate of solo practitioner Jason Shanfield, admitted to the bar in 2001[6], was reasonable. Appendix 6.

17.    "Evidence of a reasonable hourly rate can also come from awards in other cases." *Medina v. City of Chicago*, Case  No. 00 C 1, 2001 U.S. Dist. LEXIS 14650 * 13 (N.D. Ill. Sept. 17, 2001) (*citing Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *People Who Care v. Rockford Board of Education*, 90 F.3d 1307,1312 (7th Cir. 1996)).

18.    Ranieri's counsel, R. Michael McCann, who was admitted to the bar in 2001[7], bills at a rate of $300 per hour.  Appendix 7.

19.    No Court has established the billing rate for Curtis C. Warner and his billing rate of $260 per hour is primarily based upon the hourly market rate he has been able to charge and be paid in defending financially distressed consumers who have been sued by debt collectors in state court.  Appendix 2.  The $260 per hour billing rate for Curtis C. Warner is also

---

[5] http://www.iardc.org/ldetail.asp?id=729291260

[6] http://www.iardc.org/ldetail.asp?id=911876797

[7] http://www.iardc.org/ldetail.asp?id=110897601

based upon the Laffey Matrix as outlined in his Declaration.

   20. Laura K. Bautista's billing rate of $190 per hour sought is based upon the $185 hourly market rate he has been able to charge and be paid in defending financially distressed consumers who have been sued by debt collectors in state court and case law. *Garcia v. City of Chicago*, Case No. 01 C 8945, 2003 U.S. Dist. LEXIS 16570 *9 (N.D. Ill. Sept. 19, 2003) (awarding and finding $190 per hour reasonable for a second-year attorney); *Francis v. Snyder*, Case No. 04 C 4344, 2006 U.S. Dist. LEXIS 29946 *7 (N.D.Ill. May 4, 2006) (same in FDCPA case).

   21. In *Gautrex v. Chicago Hous. Auth.*, 491 F.3d 649, the Seventh Circuit stated:

> 'In calculating reasonable attorneys' fees, the district court should first determine the lodestar amount by multiplying the reasonable number of hours worked by the market rate.' *Bankston v. State of Ill.*, 60 F.3d 1249, 1255 (7th Cir. 1995). "The reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work. 'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.' *McNaola v. Chicago Transit Authority*, 10 F. 3d 501, 519 (7th Cir. 1993) (*quoting Eddleman v. Switchcraft, Inc.*, 965 F.2d 422, 424 (7th Cir. 1992)).

*Gautrex*, 491 F.3d at 659.

   22. However, an upward adjustment to the market billing rate should be made in fee shifting cases where the client does not pay costs and the monies for litigation are advanced by the attorney as such as the case in this matter. As Judge Posner wrote:

> A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan.

Richard A. Posner, Economic Analysis of Law, 534, 567 (4th ed. 1992).

## COSTS

23.    Ranieri does not dispute the costs sought in the amount of $498.32.

Appendix 1.

## DISPUTE OVER THE REASONABLENESS OF TIME SPENT

24.    Attached as Appendix 8 is an un-redacted copy of Plaintiff's counsels' time sheets.

25.    Ranieri's Rule 54.3(e) comments take issue with the amount of time Plaintiff's counsel has taken in drafting the Complaint describing it as a "boilerplate" and a "very straightforward fact pattern." Appendix 1.

26.    Ranieri's objections overlook the following allegation that involved unique research as to Ranieri:

Similar allegations against Ranieri for falsely stating or falsely implying that litigation has been commenced or will be commenced against a consumer have been alleged in the following federal matters:

a.    *Wright v. Christopher M. Ranieri d/b/a Law Office of Christopher M. Ranieri, P.A.*, *and Christopher M. Ranieri, P.A.*, Case No. 4:08-cv-00626, Dkt. 1, Complaint (S.D. Tx. Feb. 25, 2008).

b.    *Hunter v. Christopher M. Ranieri, Christopher M. Ranieri, P.A.*, Case No. 4:08-cv-00607, Dkt. 1, Complaint (S.D. Tx. Feb. 22, 2008).

c.    *Martinez v. Christopher M. Ranieri P.A.*,, Case No. 4:07-cv-0326, Dkt. 1, Complaint (S.D. Tx. Nov. 14, 2007).

d.    *Gordon v. Law Office of Christopher M. Ranieri P.A., Christopher M. Ranieri and First American Investment Company, LLC,* Case No. 2:2007cv01170, Dkt. 1, Complaint (W.D. Pa. Aug. 24, 2007).

e.    *Curtis v. Christopher M. Ranieri, and Christopher M. Ranieri P.A.,*, Case No. 07-61112, Dkt. 1, Complaint (S.D. Fla. Aug. 8, 2007).

f.    *Mills v. Christopher M. Ranieri d/b/a Law Office of Christopher M. Ranieri, P.A.*, Case No. 1:07-cv-733, Dkt. 1, Complaint (W.D. Mich. July 30, 2007).

       g.     *Ashton v. Christopher M. Ranieri d/b/a The Law Office of Christopher M. Ranieri; and Christopher M. Ranieri P.A.,* Case No. 4:07-cv-02098, Dkt. 1, Complaint (S.D. Tx. June 27, 2007).

       h.     *Estarellas v. Christopher M. Ranieri, and Christopher M. Ranieri P.A.,*, Case No. 9:07-cv-80306, Dkt. 8, Amended Complaint (S.D. Fla. May 14, 2007).

(Dkt. 27, Am. Complt. ¶ 10)

      27.     Ranieri's counsel's billing shows 4.3 hours spent on time evaluating Plaintiff's claims, but complains that Plaintiff's counsel, who is in a position of not initially knowing facts until they are investigated, spent 7.4 hours which included 2.5 hours specifically researching defendants.

      28.     There are things that are odd about Defendants that warranted investigation into their business, relationships, prior similar bad acts and multiple name changes during the litigation. For example, why would a Florida attorney have a return address to a New York post office box that happened to be in the same city as USCA. *See* Dkt. 1, Ex. 2 ("Christopher M. Ranieri P.A. PO Box 815, **Williamsville, NY 14231**) (emphasis added) compare with Appendix 7, Ranieri's legal bill being paid for by ("First American Holdings, LLC" "2809 Wehrle Drive, Suite 1, **Williamsville, NY 14221**") (emphasis added). Plaintiff's counsel also finds it odd that the Offer of Judgment of liability is to Ranieri only and First American Holdings, LLC is paying Ranieri's bill. Appendix 7. Finally, why have not Defendants made their Rule 7.1 Corporate Disclosures?

      29.     Ranieri also objects on the basis that Plaintiff's counsel is a purported "expert" in FDCPA litigation. While Curtis C. Warner has litigated approximately 60 cases in this District not all of these cases have been FDCPA cases and not all have involved the time expended to research the Defendants as has been done here; not every defendant has been named

in multiple complaints within approximately 1 calendar year involving the same allegation of lying to family members that a law suit has been filed against the plaintiff. Plaintiff's counsel does note that one court has reduced an experienced FDCPA counsel who filed 187 FDCPA cases from 6.6 hours to 3 for time spent pre-litigation, *Torgersen v. Arrow Fin. Servs.*, Case No. 06 C 6032, 2007 U.S. Dist. LEXIS 50156 * 6 (N.D. Ill. June 29, 2007), however such a reduction is not warranted here.

30.    Ranieri objects to 1.2 hours that, "Plaintiff's counsel's time spent communicating with an unrelated co-defendant, Swanson-Mace, whom Plaintiff later dismissed." Appendix 7. First, Ranieri's counsel is mistaken on who was actually was co-defendant, it was S & P. Second, under Rule 11 it is important to sue the correct party as Swanson-Mace and Ranieri were collecting on the same account. (Dkt. 1, Complt. Ex. 3); Appendix 9 (e-mails between Plaintiff's counsel and Swanson-Mace). Third, the communications with Swanson-Mace were essential investigation to Plaintiff's 15 U.S.C. § 1692e (8) claim that Defendants failed to inform Swanson-Mace that Plaintiff disputed the debt prior to Ranieri's sale of part of his law practice to her.

31.    As to Ranieri's objection of time spent of the communication between Plaintiff's two attorney's, first at the time of the conversation it was not foreseeable that the litigation would quickly end, and Ms. Bautista was being brought into a matter as additional counsel to prosecute this matter. *See* (Dkt. 21, Appearance, Apr. 21, 2008). Ms. Bautista and Mr. Warner has been co-counsel in other FDCPA matters in this District.

32.    This Court has stated that, "Conferences among co-counsel regarding strategy and important litigation decisions can improve the quality of decision-making." *Medina v. City of Chicago*, Case No. 00 C 1, 2001 U.S. Dist. LEXIS 14650 * 15 (N.D. Ill. Sept. 17,

2001).  Clearly, the time spent discussing a case between two attorney's is reasonable time spent as Judge Esterbrook has said, "[t]wo lawyers are the minimum in much private litigation."  *Bohn v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987) (Easterbrook, J., by designation) and that in fact, it is a good practice to utilize more than one attorney in litigation because, "[c]onsultation among lawyers insures that they do not overlook significant facts of inquiries." *Bohen*, 666 F. Supp. at 157.  Contrary to Ranier's assumption that Plaintiff's counsel's communications with each other was just to cover a routine call, it was the beginning of the co-counseling of this matter that was expected to continue in litigation.

### LOADSTAR CALCULATION OF ATTORNEY'S FEES

33.    Federal fee shifting statutes such as the FDCPA utilize the Loadstar method of calculation taking the reasonable hourly rate and multiplying it by the number of reasonable hour incurred.  *Tolentino*, 46 F.3d at 653 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

### CONCLUSION

WHEREFORE, Plaintiff requests this Honorable Court to make the following findings and enter an appropriate award:

A.    Costs of $498.32;

B.    A finding that a hourly rate of $190 per hour for Laura K. Bautista is reasonable;

C.    A finding that 1.7 hours was reasonable time that Laura K. Bautista spent on this matter;

D.    A finding of an hourly rate of at least $260 per hour for Curtis C. Warner to be reasonable;

E.      A finding that 19.4 hours was reasonable time that Curtis C. Warner spent on this matter; and

F.      Enter the appropriate Loadstar calculation based upon the reasonable billing rate for each of Plaintiff's counsel multiplied by the number of hours this Court found to be reasonably spent on this matter and award such an amount of attorney's fees.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Avenue, Suite 737
Chicago, Illinois 60601
(312) 238-9820 (TEL)

Laura K. Bautista
205 W. Monroe, 4th Floor
Chicago, IL 60606
(312) 263-1642 (TEL)